**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
<u>FAYETTEVILLE DIVISION</u>**

BLAKE JONES                                                            PLAINTIFF

    vs.                            Case No.: <u>5:20-cv-05120-TLB</u>

JOHN BALDWIN                                                       DEFENDANT

**<u>BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

### I. <u>INTRODUCTION</u>

Plaintiff Blake Jones brings this lawsuit pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* alleging two counts against the defendant, John Baldwin.  First, plaintiff alleges that he was not paid overtime wages for the hours he worked for the defendant and his moving business, TMT Arkansas, Inc. d/b/a Two Men and a Truck (sometimes referred to herein as "TMT") in violation of the FLSA.  Second, plaintiff asserts a claim for FLSA-based retaliation when, he alleges, the defendant terminated him on June 28, 2018 after voicing concerns regarding overtime pay on March 8, 2018.  In the defendant's Answer to plaintiff's Amended Complaint, Baldwin pled the motor carrier exemption set forth at 29 U.S.C. § 213(b)(1) as an affirmative defense to the plaintiff's claim, [Doc 23], ¶¶ 16, 22, and further pled that plaintiff was terminated legally, lawfully and with legitimate purpose. [Doc 23], ¶ 17(b)).

In furtherance of those defenses, and in support of his argument that judgment as a matter of law in his favor is now proper, it is undisputed that at all times material hereto, plaintiff Blake Jones was an employee of a motor carrier as defined in 49 U.S.C. § 13102, was a driver of vehicles having a GVWR of 10,001 pounds or greater, and had duties which affected the safe operation of commercial motor vehicles in transportation on public highways in interstate commerce.  Accordingly, pursuant to the motor carrier exemption the defendant does not owe any overtime wages to the plaintiff as a matter of law.

Furthermore, the defendant is entitled to summary judgment on plaintiff's FLSA-based retaliation claim because, first, the plaintiff cannot establish a *prima facie* case for retaliation because he held no objectively reasonable belief that the defendant was engaged in unlawful wage and hour practices. Second, the undisputed facts in this case also establish that Baldwin has articulated a legitimate, non-pretextual reason for terminating the plaintiff on June 28, 2018 – namely, that plaintiff violated company driver safety policies, violated the Federal Motor Carrier hours of service laws, and that he completed a purposefully misleading Driver's Log. Because there are no genuine issues as to any material fact with respect to either the plaintiff's claim for overtime wages or to the plaintiff's claim for FLSA-based retaliation, John Baldwin respectfully submits that judgment should be entered in his favor as a matter of law on the plaintiff's Amended Complaint.

## II.  ARGUMENT & AUTHORITY

### A.  Plaintiff is Exempt From Overtime Pay Pursuant to the Motor Carrier Exemption.

As set forth in more detail hereinbelow, the plaintiff's claim for violation of the FLSA's overtime provision fails as a matter of law because the plaintiff's work was exempt from overtime wages pursuant to the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1).

### 1.  The Motor Carrier Exemption

The Fair Labor Standards Act ("FLSA") contains many exceptions and exemptions from its general requirement that employees be paid overtime (one and one-half times their regular rate) for all hours worked in excess of forty (40) hours per week. 29 U.S.C. § 213(b)(1) provides an overtime exemption for employees who are within the authority of the Secretary of Transportation to establish qualifications and maximum hours of service pursuant to Section 204 of the Motor Carrier Act of 1935. This exemption, known as the "motor carrier exemption," applies to employees who are:

1.  Employed by a motor carrier, as defined in 49 U.S.C. §13102;

2.      Drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce; and

3.      Not covered by the small vehicle exception.

U.S. Department of Labor, Wage and Hour Division, Fact Sheet #19; *Krupicki v. Eagle One*, 2014 U.S. Dist. LEXIS 46038 (E.D. Ark. 2014); *Holmes v. Metott, Inc.*, 2013 U.S. Dist. LEXIS 189925 (E.D. Ark. 2013).

The term "motor carrier" is defined in 49 U.S.C. § 13102(15) as "a person providing motor vehicle transportation for compensation."  The exemption applies to those employees whose work involves the activities of a driver, driver's helper, loader or mechanic and which directly affects the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce.  29 C.F.R. § 782.2(b)(2).  As a general rule, if the *bona fide* duties of the job performed by the employee are such that he is, or is likely to be, called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in 29 C.F.R. § 782.2(b)(2), then the employee comes within the exemption for all workweeks when he is employed at the job.  The exemption applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation."  29 C.F.R. §782.2(b)(3).

The motor carrier exemption applies only to "commercial motor vehicles", as defined in 49 U.S.C. § 31132.  A commercial motor vehicle is one which has a "gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater."  Thus, a driver or loader of a vehicle with a GVWR of 10,001 pounds or more is exempt from any requirement to pay overtime. *McCall v. Disabled American Veterans*, 723 F.3d 962 (8th Cir. 2013).

3

## 2.    Case Law Interpreting the Motor Carrier Exemption

Arkansas's district courts and the United States Court of Appeals for the Eighth Circuit have decided several cases involving the motor carrier exemption and have not hesitated to grant summary judgment on the issue.  In *Holmes v. Metott, Inc.*, 2013 U.S. Dist. LEXIS 189925 (E.D. Ark. 2013), United States District Judge Brian Miller granted summary judgment in favor of the defendant based upon the motor carrier exemption.  The plaintiff in that case worked as a delivery driver for Metott, a company which had a contract with FedEx to deliver parcels for FedEx within a defined geographical area.  After his termination, the plaintiff filed suit claiming that the defendant violated the FLSA by failing to pay him overtime wages.  In granting summary judgment in favor of the defendant, the district court determined that the first requirement for exemption was met because Metott fell under the jurisdiction of the Secretary of Transportation.  The court noted that the Secretary has authority to prescribe requirements for "commercial motor carriers," a definition that includes vehicles used to transport property and weighing at least 10,001 pounds.  The truck driven by Mr. Holmes weighed approximately 22,500 pounds.  The court held that the second requirement for exemption was met because Holmes was a driver for Metott and the third requirement for exemption was met because Metott's vehicles were used to transport property in interstate or foreign commerce.

In *Krupicki v. Eagle One*, 2014 U.S. Dist. LEXIS 46038 (E.D. Ark. 2014), United States District Judge Kristine Baker began her analysis of the motor carrier exemption by noting that exemptions under the FLSA are construed narrowly against the employer and the employer bears the burden of establishing an exemption by a preponderance of the evidence.  2014 U.S. Dist. LEXIS 46038, *24.  The court rejected the plaintiff's contention that he was only an intrastate transporter to which the exemption did not apply, concluding that the goods delivered by Mr. Krupicki were

4

intended to be, and were, interstate goods, and, thus, he conducted transportation in interstate commerce. The court went on to address the question of whether Mr. Krupicki engaged in activities of a character directly affecting the safety of operation of motor vehicles in the transportation of property in interstate commerce within the meaning of the motor carrier exemption. Judge Baker concluded, "Mr. Krupicki was a driver and certainly directly affected the safety of operation of motor vehicles in transportation as a delivery driver." *See, e.g.*, *Benson v. Universal Ambulance Service, Inc.*, 675 F.2d 783, 786 (6th Cir. 1982) ("It would appear to be beyond question that the driver of a common carrier vehicle directly affects the safety of operation of that vehicle."); *Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 209 (1st Cir. 1972) ("It is obvious that one who drives a vehicle in interstate commerce directly affects the safety of such operations as long as he is driving.")." *Id.* at *29. Because the court found that Mr. Krupicki operated a motor vehicle in interstate commerce, he was subject to the motor carrier exemption to the FLSA and was not eligible for overtime. Summary judgment was granted in favor of EagleOne.

In *Alexander v. Tutle & Tutle Trucking*, 834 F.3d 866 (8th Cir. 2016), the Eighth Circuit Court of Appeals affirmed a summary judgment granted by United States District Court Judge Brian Miller, finding that eleven truck drivers employed by the defendants were not entitled to overtime wages because of the motor carrier exemption. The drivers in *Alexander* contended that they drove primarily in Arkansas and were not called upon in the ordinary course of their duties to make interstate trips. They asserted that none of them drove outside of Arkansas more than five times over an 18 month period and that, as a group, they drove in interstate commerce less than one percent of the time. Citing *Morris v. McComb*, 332 U.S. 422, 431, 68 S. Ct. 131, 92 L. Ed. 44 (1947) and 29 C.F.R. § 782.2(b)(2), the Eighth Circuit explained that it is "the character of the activities rather than the proportion of either the employee's time or of his activities" that determines the Secretary of

5

Transportation's jurisdiction to regulate employees and, thus, the applicability of the overtime exemption. The court held that the motor carrier exemption "applies even where interstate transportation makes up a small percentage of an employee's duties" and found that the plaintiff drivers had " a reasonable expectation of interstate travel." 2016 U.S. App. LEXIS at *10.

Finally, this Court has had the opportunity to evaluate whether employees of this same defendant's moving business, TMT Arkansas, Inc. d/b/a Two Men and a Truck, are exempt from overtime wages pursuant to FLSA's motor carrier exemption. In *In re Two Men and a Truck Litigation*, this Court was asked to consider whether Two Men and a Truck's "drivers" and "loaders" fit within the exemption for overtime purposes. *In re Two Men and a Truck Litigation*, 2017 U.S. Dist. LEXIS 26017 (W.D. Ark. 2017). In that case, this Court ruled in favor of Two Men and a Truck, finding that the FLSA motor carrier exemption applied to a "driver" of TMT "whose pay records indicate that 80-90% of his hours on the job were spent driving a moving truck." *Id.* at pg. 6, *citing* 29 C.F.R. § 782.2(b)(3). Further, the Court concluded that even those Two Men and a Truck employees who were classified as "movers" – as opposed to "drivers" – were, among other things, engaged in work that "came within the regulatory authority of the Secretary of Transportation." This Court granted summary judgment to TMT finding that both its "driver" and "loader" employees were exempt from overtime pay pursuant to 29 C.F.R. §782.2(b)(3).

### 3.     The Motor Carrier Exemption Applies to Plaintiff.

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, applying applicable law to the undisputed facts of this case establishes that there is no dispute as to any material fact with respect to the motor

carrier exemption's express application to the plaintiff's employment as a "driver" for defendant. Because no genuine issues of material fact remain, the defendant respectfully submits that he is entitled to judgment in his favor as a matter of law on the plaintiff's FLSA overtime claim.

The affidavit of John Baldwin, co-owner and president of TMT Arkansas, Inc. d/b/a Two Men and a Truck, establishes that the defendant provides motor vehicle transportation for compensation, qualifying it as a motor carrier under the Motor Carrier Act.  It is also undisputed that the defendant engages in interstate commerce in its work as a moving company.  Accordingly, the first prong of the motor carrier exemption is indisputably met under the facts of this case.

Plaintiff Blake Jones was employed by the defendant as a "driver."  Exhibit A, ¶ 4.  Mr. Baldwin's Affidavit and the Job Sheets associated with plaintiff's work establish that Mr. Jones made several interstate trips as a driver while an employee of TMT, and he was available to make additional interstate trips when needed.  Exhibit A, ¶¶ 8, 9; Exhibit B.  Without question, and as District Judge Kristine Baker recognized in *Krupicki v. Eagle One, supra*, the duties of a driver affect the safety of operation of motor vehicles in transportation on public highways in interstate commerce.  And, as the Eighth Circuit held in *Alexander v. Tutle & Tutle Trucking, supra*, it is the character of the employee's duties and not the proportion of time spent on them that is important. The *Alexander* Court went on to state that an employer may invoke the exemption even as to "a driver who performs no interstate driving" so long as he is "'subject to being assigned to an interstate trip' and there is a reasonable expectation of such an assignment." *Id.*  Here, the facts are undisputed that the plaintiff was employed as a driver for his entire employment with TMT, and that he was a driver on at least 17 interstate moves over the course of his 12 month employment, including 7 separate interstate moves in the last 6 weeks of his employment alone.  *See* Affidavit of John

Baldwin, ¶¶ 4, 8; Statement of Undisputed Facts, ¶ 5, 9; and Job Sheets.  Accordingly, the second element of the exemption is also satisfied.

Lastly, John Baldwin's Affidavit establish that the trucks plaintiff drove on an everyday basis over the course of his employment with the defendant all had GVWRs of either 25,990, 25,999 or 26,000 pounds, well in excess of the 10,001 GVWR threshold for the motor carrier exemption. Exhibit A, ¶ 7, Exhibit 3.  Although plaintiff did drive an F-150 Truck weighing less than 10,000 GVWR on a total of 3 occasions in the first 3 months of his employment (8/8/17, 8/25/17 and 9/14/17), the plaintiff drove at least 275 jobs (some of which were multiple days) over the course of his one year employment with defendant.  *See* Exhibit B.  Accordingly, at very most a total of 1.09% of his driver trips involved a vehicle weighing less than 10,000 GVWR.  This work on a small vehicle is, as a matter of law, *de minimis*.   Accordingly, the plaintiff's three total trips in a small vehicle over the course of his one year employment does not qualify him for the small vehicle exception to the motor carrier exemption.  *See, e.g. Berry v. Best Transp., Inc.*, 2018 U.S. Dist. LEXIS 217879 (E.D. Mo. 2018)(explaining that the "The Court finds that case law supports Defendants' argument for the inclusion of a *de minimis* threshold") *citing Childress v. Ozark Delivery of Mo., LLC*, 95 F.Supp.3d 1130 (W.D. Mo. 2015)(holding that "Where a mixed fleet is involved, the issue for the court is whether the employee spends more than a *de minimis* amount of time operating vehicles that weigh less than 10,000 pounds.")(internal citations omitted); *McCall v. Disabled Am. Veterans*, 723 F.3d 962, 966 (8th Cir. 2013) (noting that "Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the FLSA when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise

8

to mistakes and disputes."); *see also Oddo v. Bimbo Bakeries U.S.A., Inc.*, 391 F.Supp. 3d 466 (E.D. Pa. 2019).

Here, the records of every trip taken by the plaintiff as an employee driver are attached as Exhibit B in support of this Motion.   As noted above, a review of the records indicates that on only 3 jobs out of a total of 275 jobs (1.09%), did the plaintiff operate a small vehicle weighing under the 10,000 GVWR threshold.   Exhibit B.   Those three trips each occurred during the first 3 months of plaintiff's employment – August 8, 2017, August 25, 2017 and September 14, 2017, respectively – and each occurred more than two years prior to plaintiff's filing of this lawsuit.   Accordingly, it is undisputed that the extremely limited operation of a small vehicle by plaintiff was *de minimis* and does not qualify plaintiff for the small vehicle exception.   And, further, because each trip was taken more than two years prior to the filing of plaintiff's original Complaint, the plaintiff's *de minimis* operation of a small vehicle is outside of the limitation period for consideration in plaintiff's overtime claim.   Accordingly, summary judgment on plaintiff's FLSA overtime claim is now ripe.

Notwithstanding that plaintiff's operation of a small vehicle was *de minimis* and was outside of the applicable limitations period, even if these 3 trips do trigger an application of the small vehicle exception, overtime is only payable for the specific workweek in which the plaintiff drove a small vehicle.   *See* DOL Wage & Hour Field Assistance Bulletin 2010-2.   For all other weeks, the motor vehicle overtime exemption remains applicable, and overtime is not payable to the plaintiff.   *Id.*

Based upon the foregoing, Baldwin submits that plaintiff's extremely limited driving of a small vehicle was so infrequent and *de minimis* that the small vehicle exception to the motor carrier exemption does not apply, as a matter of law.   Further, each small vehicle trip was taken beyond the applicable two year limitation period.   However, to the extent that the exception does apply, the undisputed proof as established by the attached "job sheets" details that plaintiff drove a small

vehicle on only 3 occasions – August 8, 2017, August 25, 2017 and September 14, 2017.  Each and every other job worked by the plaintiff involved an exempt vehicle weighing well over 26,000 GVWR – far exceeding the 10,000 pound threshold.

Because the motor carrier exemption applies to the work that plaintiff performed for defendant while employed as a driver for the defendant, Baldwin submits that he is entitled to judgment as a matter of law on the plaintiff's claim for unpaid overtime wages.  In fact, this Court has already considered the applicability of the motor carrier exemption to drivers and loaders employed by this defendant and has squarely concluded that the employees' "overtime claims will be dismissed with prejudice due to the application of the motor-carrier exemption." *In re Two Men and a Truck Litigation*, 2017 U.S. Dist. LEXIS 26017, 13 (W.D. Ark. 2017).  Consequently, Baldwin respectfully submits that judgment in his favor as a matter of law is ripe, and that the plaintiff's claim in his Amended Complaint seeking payment of overtime wages should be dismissed with prejudice.

B.    The Plaintiff's Claim for FLSA-Based Retaliation Must Be Dismissed.

In addition to dismissal of the plaintiff's overtime claim, the plaintiff's second cause of action asserting FLSA-based retaliation is also subject to dismissal as a matter of law.  Specifically, the FLSA-based retaliation claim should be dismissed, first, because the plaintiff cannot establish a *prima facie* case of retaliation and, second, because Baldwin has articulated legitimate and non-pretextual bases for terminating the plaintiff's employment.  Because both of these grounds for judgment are established by the undisputed facts in this case – either one of which is independently sufficient to support summary judgment – the defendant submits that the second claim must, too, be dismissed as a matter of law.

10

### 1.      Plaintiff cannot establish a *prima facie* case of retaliation.

The FLSA protects employees against retaliation from their employer for asserting their rights under the statute.  29 U.S.C. § 215(a)(3).  Specifically, the FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3).  To demonstrate a *prima facie* case of retaliation under the FLSA, the plaintiff must show that he (1) participated in a statutorily-protected activity; (2) that the defendant took an adverse employment action against him; and (3) that there was a causal connection between the protected activity and the adverse employment action. *Montgomery v. Havner*, 700 F.3d 1146, 1149 (8th Cir. 2012). *See also Fezard v. United Cerebral Palsy of Cent. Ark.*, 809 F.3d 1006, 1011 (8th Cir. 2016).  While the defendant concedes for purposes of this motion that an adverse employment action was taken against him on June 28, 2018, the plaintiff cannot establish either the first or third element required to demonstrate a *prima facie* retaliation claim.  For these reasons, the plaintiff's FLSA-based retaliation claim must be dismissed.

The ***only*** evidence which plaintiff suggests establishes that he participated in a statutorily-protected activity are a few short, vague and nondescript text messages purportedly exchanged with a manager at 3:00 a.m. on March 7, 2018.  In those messages the plaintiff makes the following verbatim comments:

"Im sad I didn't get to tell her bye"

"I felt like she was made at me and ready for me to leave"

"She was like im done with talking about work lol"

"They didn't say good night to me or nothing I was like dammmmnnn..."

"Would john tell me if they were mad at me?"

11

Pursuant to the FLSA, "statutorily protected activity" includes the filing of a complaint, the instituting of a proceeding, the testifying in a proceeding, or serving on an industry committee. 29 U.S.C. § 215(a)(3). The plaintiff's middle-of-the-night text messages have no reference or relation to any purported protected activity involving a complaint regarding failure to pay overtime. These messages cannot be sufficient to establish the first element required of plaintiff to state a *prima facie* case of retaliation. And there is simply no other proof or evidence of plaintiff having otherwise filed a complaint, instituted a proceeding, testifying in a proceeding or serving on an industry committee related to an alleged failure to pay overtime. Without proof of engagement in a "statutorily protected activity," the plaintiff's retaliation claim fails.

However, and even assuming that plaintiff's 3:00 a.m. text messages were related to overtime wage matters, and even further assuming that plaintiff made some form of oral complaints directly to the defendant regarding overtime pay (which is wholly denied), the plaintiff still cannot present a *prima facie* case of retaliation because he could not have any objective, reasonable belief that the defendant was engaging in unlawful conduct for failure to pay overtime wages to his drivers and employees. *See, e.g.*, *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998). Significantly, plaintiff's "reasonable belief" that the defendant has been engaged in unlawful FLSA conduct contains both an objective and a subjective component. *See, e.g.*, *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Stated differently, the plaintiff "must not only show that he subjectively . . . believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir.1999). The "objective reasonableness" of the plaintiff's belief is "measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir.1999).

In applying this "objective reasonableness" test, the Eleventh Circuit has held that, where courts have concluded with unanimity that an employer's conduct is lawful, a plaintiff's belief that his employer engaged in an unlawful employment practice is not "objectively reasonable," and the plaintiff's complaints therefore did not qualify as "protected activity." *See Harper*, 139 F.3d at 1388. *See also Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1135 (N.D. Ga. 2004) (citing *Harper*, 139 F.3d at 1388) (finding plaintiff's belief that employer violated FLSA objectively unreasonable in light of Eleventh Circuit case law and the law of other circuits establishing that employer's conduct was lawful).  Applying these same principles herein, the plaintiff could have no objectively reasonable belief that John Baldwin was violating FLSA overtime laws in light of the fact that, just one month prior to plaintiff becoming employed by defendant, this Court issued an Opinion and Order finding that TMT's drivers and loaders are exempt from overtime wages pursuant to the motor carrier exemption.  Because the motor carrier exemption was determined to apply to drivers of the defendant's business, and because the plaintiff was a driver at all times relevant herein, the plaintiff cannot establish that he engaged in any protected activity under the FLSA.  Accordingly, the plaintiff's FLSA-based retaliation claim must be dismissed as a matter of law.

Even assuming, *arguendo*, that the plaintiff can establish the first element of his retaliation claim (which defendant fervently contends he cannot), the plaintiff still cannot present any proof to establish the third element of his retaliation claim – namely, that a causal connection exists between the allegedly protected activity and plaintiff's termination.  The purported FLSA based complaint made by the plaintiff occurred on March 7, 2018.  The plaintiff was terminated more than three (3) months later, on June 28, 2018.  In those more than three and a half months between his supposed overtime complaint and the plaintiff's termination, no adverse action was ever taken against the plaintiff whatsoever.  The plaintiff continued to work on a full-time basis, continued to be assigned

all of the same driving jobs, and maintained all of the same responsibilities as before.  In fact, the plaintiff's opportunities increased during the Spring of 2018, as he was assigned 10 interstate trips between March 7, 2018 and the date of his termination.  *See* Exhibit A, ¶ 8; Exhibit B; and Statement of Undisputed Facts, ¶ 9.  There is absolutely no proof that the plaintiff's termination was causally connected to his alleged overtime complaint on March 7, 2018 (and, as set forth in more detail below at Section B.2., *infra*, plaintiff's termination was made for substantial cause).  Because there exists no proof to establish a causal connection in any form or fashion between plaintiff's alleged protected activity in early March and his termination in late June, the plaintiff cannot meet his burden of establishing the third element required to state a *prima facie* claim of retaliation.

In sum, because the plaintiff cannot establish either the first or the third elements required to state a claim for retaliation, summary judgment in favor of the defendant is proper.

### 2.      Plaintiff's Termination Was Based Upon a Legitimate, Non-Retaliatory Reason.

Claims of retaliation under the FLSA are subject to the *McDonnell Douglas* burden-shifting framework.  *See Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Under this framework, even if the plaintiff can establish a *prima facie* case supporting each of the three elements of retaliation, a defendant may rebut the plaintiff's claim by advancing a legitimate, nonretaliatory reason for its employment action.  *Jackman v. Fifth Judicial District Dep't of Correctional Servs.*, 728 F.3d 800, 804 (8th Cir. 2013).  The plaintiff then has the burden to establish that the legitimate, non-retaliatory reasons articulated are only a pretext for retaliation.  *Grey*, 396 F.3d at 1035.  A plaintiff must show that "the desire to retaliate was the but for cause of" the termination.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013);

*see also Van Horn v. Best Buy Stores*, L.P., 526 F.3d 1144, 1148 (8th Cir. 2008).  Temporal proximity alone is insufficient to show that an employer's proffered reason for action was a pretext for discrimination. *Gibson v. Geithner*, 776 F.3d 536, 541 (8th Cir. 2015).  Here, the evidence does not even support a temporal proximity between the alleged complaint and termination.  But, in any event, evidence of pretext and retaliation "is viewed in light of the employer's justification." *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005).  In order to succeed on his claim, the plaintiff "must both discredit [the defendant's] asserted reasons for [plaintiff's] termination and show that the circumstances permit drawing a reasonable inference that the real reason for [plaintiff's] termination was retaliation." *Hutton v. Maynard*, 812 F.3d 679, 684-85 (8th Cir. 2016).

Here, the decision to terminate plaintiff's employment was legitimate, substantially justified, and was under no circumstances retaliatory.  Specifically, the defendant's decision to terminate plaintiff was based upon the plaintiff's violation of federal hours of service laws, his violation of company safety policies, and based upon the plaintiff's inaccurate and falsely completed driving logs.  In fact, the plaintiff's unsafe, unacceptable and illegal actions while operating a DOT regulated truck not only subjected the plaintiff and the defendant, both, to potential civil and criminal penalties, but plaintiff's actions also unnecessarily placed the safety of others using interstate roads at risk.  Accordingly, the defendant's decision to terminate plaintiff was unquestionably legitimate and justified, and the decision had absolutely nothing to do with any purported complaint regarding overtime wages – of which there were none to begin with.

The Activity Report attached as Exhibit C to the Motion details with particularity the plaintiff's driving activity on his interstate trip to Cosby, Tennessee.  A review of the Activity Report clearly establishes the legitimacy of defendant's decision to terminate the plaintiff on June 28, 2018.  Specifically, the Activity Report/GPS record reveals the following undisputed facts as it relates to

plaintiff's driving activities on the evening of June 26 and early morning hours of June 27, 2018 (the Activity Report is logged in Pacific Standard Time; for purposes herein, the time has been converted to Eastern Standard Time), while in East Tennessee on an interstate work job:

11:50 p.m. EST: Arrived at Hotel (11341 Campbell Lakes Dr., Knoxville, TN);

12:36 a.m. EST: Left Hotel, drove to Jolly's Sports Bar (3025 Alcoa Hwy., Knoxville, TN);

2:51 a.m. EST: Left Jolly's Sports Bar;

3:13 a.m. EST: Arrived at Pilot Gas Station (701 N. Campbell Station Rd., Knoxville, TN);

3:25 a.m. EST: Left Gas Station;

3:54 a.m. EST: Arrived back to Hotel;

    \*Vehicle only off for 6 hours, 33 minutes.

10:28 a.m. EST/9:28 a.m. CST: Left Knoxville, TN.

    \*Drove 12 hours, 45 minutes consecutive with no engine shutoff.

11:13 p.m. EST/10:13 p.m. CST: Arrived in Bentonville, AR.

*See* Exhibit C.  John Baldwin reviewed the Activity Report associated with the TMT truck being driven by plaintiff on this interstate trip at approximately 7:30 a.m. on the morning of June 28, 2018. *See* Exhibit A, ¶ 13.  After his review of the Activity Report for plaintiff's driving on this interstate job, Baldwin was left with no choice other than to terminate plaintiff for his actions and multiple safety violations during the June 25-27, 2018 interstate trip.  Specifically, the Activity Log generated for plaintiff's interstate trip detailed multiple Federal Motor Carrier Safety Regulation violations and multiple violations of company safety policies.  It was the plaintiff's own actions in putting himself, the defendant's company, and other innocent travelers on the interstate roadways at substantial risk of harm by violating federal regulations and company safety policies that led to defendant's decision to terminate plaintiff.

Specifically, the United States Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA") promulgates various safety regulations which govern the use and operation of motor carriers by drivers.  Particularly, the FMCSA safety regulations contain certain "Hours of Service" limits for drivers.  *See* 49 C.F.R. § 395.  According to the Federal Motor Carrier Safety Administration's Interstate Truck Driver's Guide to Hours of Service publication, a driver of a regulated truck has "a lot of responsibility as you drive down the road. The biggest concern is safety."  *See* Exhibit F.  The purpose of hours-of-service regulations is to "keep fatigued drivers off the public roadways" and the regulations "put limits in place for when and how long you may drive, to ensure that you stay awake and alert while driving, and on a continuing basis to help reduce the possibility of driver fatigue."  Exhibit F.

As part of these hours-of-service regulations, a driver must have 10 consecutive hours off duty prior to operating a vehicle.  49 C.F.R. § 395.3.  By way of example, the FMCSA's Guide to Hours of Service laws states that a driver "***must not drive again until you have at least 10 consecutive hours off duty. You may do other work . . . but you cannot do any more driving of a commercial motor vehicle on a public road***."  *See* Exhibit F, *citing* 49 C.F.R. 395.3(a)(3).  The Activity Report records for plaintiff's interstate trip establish that the DOT regulated truck being driven by plaintiff in the early morning hours of June 28, 2018 was not off of public roads for 10 consecutive hours as required by law.  In fact, the records establish that the truck was only off of public roads for a period of 6 hours and 33 minutes – nearly 3.5 hours short of the required 10 consecutive hour limit.  Exhibit C.  This is a clear violation of FMCSA's hours-of-service regulations, and violates the express purpose of hours-of-service laws – namely, to keep fatigued drivers off public roadways.

17

In addition to violating the 10 hour off-duty requirements, plaintiff also violated the federally promulgated 11 hour driving limit.  Specifically, the relevant hours-of-service provisions also provide that "A driver may drive a total of 11 hours during the 14-hour period specified . . . in this section." 49 C.F.R. § 395.3(a)(3).  Stated differently, a driver may drive for 11 out of 14 hours after the driver has been off duty for 10 consecutive hours.  The Activity Report records attached as Exhibit C to the Motion establish that the commercial motor vehicle being driven by plaintiff was never turned off for a total of 12 hours and 45 minutes consecutively.  The plaintiff's driving time, therefore, far exceeds the 11 hour maximum driving limit provided by federal hours of service laws.  Accordingly, in addition to plaintiff's fatigue as a result of violating the 10 hour off duty provisions, plaintiff also exceeded the maximum drive time limits of 11 hours.  *See* 49 C.F.R. § 395.3.

Notwithstanding the above, plaintiff also violated the federal hours-of-service mandated thirty minute rest break provision, which requires that if more than 8 consecutive hours have passed since the last off-duty/break period of at least 30 minutes, a driver must take an off duty break of at least 30 minutes before driving again.  For example, if a driver started driving immediately after coming on duty, he or she could drive for 8 consecutive hours, take a half-hour break, and then drive another 3 hours, for a maximum total of 11 driving hours within a 14 hour time frame.  Here, the Activity Report establishes that there was no break from driving taken during the truck's more than 12 hour journey home.  The plaintiff did not comply with hours-of-service laws.  In sum, the plaintiff's driving activities prior to his termination establish multiple significant violations of the Federal Motor Carrier Safety Administration's hours-of-service regulations, any one of which could subject both the plaintiff and defendant to civil and criminal penalties.

In addition to violating the FMCSA's safety regulations, however, the plaintiff also violated TMT company safety policies, which also served as grounds for his termination.  Specifically,

18

defendant has in force a Safety Policy which all employees, including the plaintiff, are provided at the beginning of their employment and by which they are expected to abide.  Exhibit E.  The Safety Policy begins with a letter to all employees drafted by the defendant, where it is stated, "Safety is a priority and a cornerstone of our culture . . . This should be illustrated on a daily basis."  *See* Exhibit E, pg. 4.  The Safety Policy goes on to provide:

> We at TMT Arkansas, Inc. dba Two Men and a Truck consider no phase of operations more important than safety and accident prevention.  Operating a vehicle in an unsafe manner or working in unsafe conditions jeopardize each employee's ability to provide for his or her family and the safety and well being of fellow workers, as well as others that share the public roadways. . . It shall be company policy to abide by all Federal, State and/or local laws governing our drivers, equipment, and vehicle maintenance operation. . . At no time will this company condone or allow an employee to exceed the limit of the law.

Exhibit E, pg. 5.

Among other provisions of this Safety Policy, the following are particularly applicable to plaintiff's actions on his June 25-27 interstate job:

> No driver of TMT Arkansas, Inc. dba Two Men and a Truck shall violate the HOS [hours of service] laws under any circumstances.

> Serious Violations:  Exceed Hours of Driving as the law allows; Exceed Hours of Duty time as the law allows; Failure to have required hours off duty, as indicated by law.

> Under the Federal Department of Transportation guidelines, [defendant] is held responsible, jointly with you as their driver, to comply with the regulations concerning driver's HOS [hours of service] and logging procedures.  Violations of these regulations will not be tolerated.

> Disciplinary action shall include verbal warnings, written warnings, possibly retraining, suspensions and/or indefinite suspensions or termination.

Exhibit E, pg. 36, 39-40. Defendant's safety policy makes ultimately clear that safety is a top priority, violation of safety provisions and laws will under no circumstances be permitted or tolerated, and failure to abide by safety regulations will result in discipline, including termination.

Here, the plaintiff indisputably violated federal safety regulations and company safety policies. His actions placed the safety of himself, of others and of the defendant's business operations in jeopardy. The company safety policy makes clear that plaintiff was subject to discipline for his safety violations, and he was terminated as a result of these serious violations.

And, finally, in an apparent effort to conceal his safety violations, the plaintiff also prepared and provided falsified driving log/driving records for his interstate trip. *See* Exhibit D. These driver logs violate federal logbook regulations and company policies, too, in that, among other things, the logs lack necessary and required information (*see* 49 C.F.R. § 395.8), they fail to indicate required status change locations (49 C.F.R. § 395.8(a)(2)), they fail to include the total hours (49 C.F.R. § 395.8(d)), and they fail to match the supporting Activity Report documents, further establishing their inaccuracy and false reporting (49 C.F.R. § 395.8(e)(1)). Additionally, the plaintiff had prepared two driving logs for each day, which constitutes a serious violation of company safety policies, which prohibits the preparation of "two or more logs for one date." (Exhibit E, pg. 40; Exhibit D) According to the plain language in defendant's Safety Policy, "Under the Federal Department of Transportation guidelines, TMT Arkansas, Inc dba Two Men and a Truck is held responsible, jointly with you as their driver, to comply with the regulations concerning driver's HOS [Hours of Service] and logging procedures. ***Violations of these regulations will not be tolerated***." Exhibit E, pg. 40.

The undisputed, material facts in this case establish as a matter of law that the defendant did not terminate the plaintiff on June 28, 2018 in supposed retaliation for an altogether vague and non-specific purported overtime complaint in March but, to the contrary, the plaintiff was terminated as a result of his serious violations of federal safety regulations and company safety policy.

III. <u>CONCLUSION</u>

As set forth in the defendant's Motion for Summary Judgment, the Statement of Undisputed Material Facts, the documentation and evidence submitted in support of the Motion, and as established by the authority set forth in this Brief in Support, there are no genuine issues of material fact remaining with respect to the applicability of the motor carrier exemption in this case, or with respect to the grounds for plaintiff's termination of employment with defendant.  Because each of the elements of the motor carrier exemption has been proven, John Baldwin is entitled to judgment in his favor as a matter of law with respect to plaintiff's claims for overtime wages under the FLSA, along with any associated claims for liquidated damages, costs or fees.  Furthermore, the undisputed facts establish that plaintiff cannot establish a *prima facie* case of retaliation and that, even if he could, plaintiff's termination was based upon a legitimate, non-retaliatory reason – namely, plaintiff's serious violations of federal motor carrier safety regulations and the defendant's written Safety Policy.  The defendant is, therefore, also entitled to judgment in his favor as a matter of law on plaintiff's FLSA-based retaliation claim.

Based upon the arguments and authority set out hereinabove, John Baldwin respectfully submits that each and every claim alleged by the plaintiff in his Amended Complaint [Doc. 22] should be dismissed with prejudice.

Respectfully submitted,

JOHN BALDWIN

By:      */s/ William F. Clark*
          William F. Clark          #2010142
          DAVIS, BUTT, TAYLOR
             & CLARK, PLC
          75 N. East Ave., Suite 402
          Fayetteville, AR 72702-1224
          (479) 521-7600 (Telephone)
          wclark@dbtcfirm.com

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of June, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all attorneys and persons who have entered an appearance for notification of electronic filings, and further certify that I have served the foregoing pleading by first class mail, postage prepaid, on the following non CM/ECF System participant:

Mr. Blake Jones
1105 E. Courage
Siloam Springs, AR 72761

*/s/ William F. Clark*
William F. Clark