**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**BLAKE JONES**                                                              **PLAINTIFF**

**V.**                         **CASE NO. 5:20-CV-5120**

**JOHN BALDWIN, d/b/a
Two Men and a Truck, Bentonville, AR**                    **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

*Pro se* Plaintiff Blake Jones alleges in this lawsuit that his former employer, Defendant John Baldwin, the franchise owner of Two Men and a Truck of Bentonville, Arkansas, violated the Fair Labor Standards Act ("FLSA") by failing to pay Mr. Jones overtime compensation.  Mr. Jones also asserts a claim for FLSA-based retaliation.  On June 17, 2021, Mr. Baldwin filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts (Docs. 34–36).  Mr. Jones filed a Response in Opposition (Docs. 40 & 41) on July 21, 2021.  Thereafter, on July 27, 2021, Mr. Baldwin filed a Reply (Doc. 44), making the Motion ripe for decision.  For the reasons set forth below, summary judgment is **GRANTED**.

## I.  BACKGROUND

Mr. Jones is a former employee of Two Men and a Truck, a national moving company.  The owner of the local franchise that employed Mr. Jones is Defendant John Baldwin. The parties agree that Two Men and a Truck, Bentonville, provides moving services to customers who require interstate or intrastate moves.  During Mr. Jones's employment with Two Men and a Truck from June 28, 2017, to June 28, 2018, he held the position of "Driver" and drove a box truck, which weighs at least 10,001 pounds, on both intra- and interstate moving trips for customers.  It is undisputed that Two Men and

a Truck is a motor carrier as defined in 49 U.S.C. § 13102(14), which operates under the authority of the Department of Transportation ("DOT").  It is also undisputed that Mr. Jones's job involved packing, moving, and safely driving a commercial motor vehicle to transport household goods, office furniture, and other heavy items from one place to another for customers.

Mr. Jones contends that although he did drive box trucks in the course of his employment, he also drove an F-150 pickup truck and/or a small moving van or company car—each of which weighed under 10,000 pounds—to and from certain customer locations when a moving job would require more than three employees.[1]  Mr. Jones does not specify how often he drove vehicles that weighed under 10,000 pounds in the course of his job.  Instead, he contends it is "possible" he drove some lighter weight vehicles, and that on certain jobs involving more than three employees, a lighter weight vehicle "could have been used" to transport personnel.  *See* Doc. 40, p. 2.

Mr. Baldwin has produced the "move sheets" that document the 275 moving jobs that Mr. Jones performed during the year he was employed.  *See* Docs. 34-2–34-6.  Mr. Jones does not contest the authenticity or accuracy of these move sheets, nor does he contend that the documents are incomplete.  He does note that one of the move sheets, *see* Doc. 40-1, p. 6, indicates that a lighter weight truck was used for a particular job.[2]  He also states in his response to the Motion:  "Many of the move sheets provided by the defendant, as exhibits in his Motion for Summary Judgment, show 4 employees and only

---

[1] This was because a box truck apparently only has room to seat up to three employees.

[2] He also cites to another move sheet, *see* Doc. 40-1, p. 5, for the same proposition; however, that sheet clearly indicates that truck A-117 was used for the job.  According to uncontroverted documentation produced by Mr. Baldwin, truck A-117 is a box truck that weighs more than 10,001 pounds.  *See* Doc. 34-1, p. 12.

one truck being used." (Doc. 40, p. 2). Mr. Jones does not specify which of the 275 move sheets allegedly "show 4 employees and only one truck." He also fails to explain why having four employees and one truck on a job would necessarily mean that Mr. Jones only drove a lighter weight vehicle and did not pack and drive the box truck that was used for the move.

With respect to Mr. Jones's claim for overtime compensation, he argues that he was not paid time-and-a-half for the hours he spent performing post-move duties, including post-trip inspection of the moving truck, sweeping the truck, completing paperwork, and cleaning out the cab and refueling the truck. *See* Doc. 40, p. 4. He does not quantify how many hours he spent performing these tasks.

Finally, with respect to his retaliation claim, Mr. Jones explains that on March 8, 2018, he and Mr. Baldwin were in Florida at a convention for Two Men and a Truck, and Mr. Jones mentioned to Mr. Baldwin a prior litigation in which other employees had sued the franchise for failure to pay overtime compensation. Mr. Jones maintains that he then suggested to Mr. Baldwin that he was liable "to pay Jones overtime," and that this suggestion made Mr. Baldwin angry. (Doc. 40, p. 5). Mr. Jones does not allege that he filed a complaint or threatened to sue Mr. Baldwin for failure to pay overtime before he was terminated. Mr. Jones also does not maintain that he had other conversations with Mr. Baldwin, apart from the one described above, about overtime compensation or the FLSA. He agrees he was fired approximately three months after this conversation took place, on June 28, 2018.

Mr. Baldwin says he fired Mr. Jones for falsifying DOT paperwork and for violating federal law regarding the maximum number of hours a driver of a commercial motor

vehicle can drive during a fourteen-hour period.  Mr. Jones denies there was good cause to terminate him and maintains that Mr. Baldwin made the decision to fire him even before he "had possession of Jones['] paper logs" that documented Mr. Jones's last interstate trip.   (Doc. 40, p. 8).  Further, Mr. Jones denies falsifying these logs and breaking any DOT rules about hours of service.

Mr. Baldwin's affirmative defense to the failure-to-pay-overtime claim is that moving-truck drivers such as Mr. Jones fall under the motor-carrier exemption of the FLSA.  The text of the exemption, which is found at 29 U.S.C. § 213(b)(1), states the following:

> **(b) Maximum Hour Requirements** The provisions of section 207 of this title [regarding overtime compensation under the FLSA] shall not apply with respect to—
>
> > (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49.

*Id.*

Title 49 of Section 31502 of the United States Code states that "[t]he Secretary of Transportation may prescribe requirements for—(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier."  The Eighth Circuit has clarified that "the overtime-pay provision of § 207 [of the FLSA] applies to vehicles with a GVWR [gross vehicle weight rating] of 10,000 pounds or less."  *McCall v. Disabled Am. Veterans*, 723 F.3d 962, 966 (8th Cir. 2013). Thus, a driver or loader of a vehicle with a weight of 10,001 pounds or more is exempt from any requirement to pay overtime.  *Id.*

Below, the Court will consider the motor-carrier exemption and determine whether Mr. Baldwin is entitled to summary judgment of the overtime claim.  Next, the Court will consider whether Mr. Jones has established a genuine, material dispute over whether he was terminated in retaliation for asserting his rights under the FLSA.

## II.  LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, when the movant meets his burden of showing entitlement to summary judgment, the nonmovant cannot rest on the allegations in his complaint and must instead "meet proof with proof" to create a jury question.  *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010).

## III.  DISCUSSION

### A.  Overtime Compensation Claim

As previously stated, there is no dispute of fact that: (1) Two Men and a Truck, Bentonville, is a motor carrier, (2) Mr. Jones was employed as a driver for Two Men and a Truck, (3) Mr. Jones performed 275 moves during his one-year tenure at Two Men and a Truck, and (4) Mr. Jones drove a truck weighing at least 10,001 pounds on at least seventeen interstate moves and hundreds of intrastate moves.

The Secretary of Transportation determines the maximum number of hours of service that certain employees of motor carriers may perform.  Accordingly, the work performed by these employees is not subject to the overtime requirements of the FLSA.  *See Williams v. Cent. Transp. Int'l, Inc.*, 830 F.3d 773, 778 (8th Cir. 2016) ("[I]f an employee spends a substantial part of his time . . . participating in or directing the actual loading of a motor vehicle common carrier's trailers operating in interstate or foreign commerce, the Secretary of Transportation has the authority to regulate that employee's hours of service and the [Motor Carrier Act] Exemption applies, regardless of the employee's precise role in the loading process."); *Alexander v. Tutle and Tutle Trucking, Inc.*, 834 F.3d 866, 871 (8th Cir. 2016) (finding that drivers of moving trucks perform job duties that affect "the safety of operation of motor vehicles" and fall under the motor-carrier exemption).

The undisputed evidence shows that Mr. Jones was a driver on at least seventeen interstate moves in the course of his year-long employment, including seven separate interstate moves in the last six weeks of his employment alone.  The trucks he drove on an everyday basis weighed well in excess of the 10,001 pounds required to qualify for the motor-carrier exemption.  Even though Mr. Jones did on occasion drive lighter weight

6

vehicles, which his employer admits, *see* Doc. 35, p. 6, there is no genuine, material dispute about the fact that those occasions were few and far between.  Mr. Baldwin states that Mr. Jones drove a small vehicle three times in the first three months of his employment:  August 8, August 25, and September 14, 2017.  Mr. Jones documents one additional time, *see* Doc. 40-1, p. 6, but other than that, there is no other evidence that Mr. Jones drove anything other than 20,000-pound box cars for the 271 other moving jobs he completed.

Mr. Jones asserts generally that he must have driven lighter weight vehicles fairly often during these jobs, even though the move sheets do not confirm this.  He reasons that a box truck holds only three passengers, so all of the moves that involved more than three employees must have required the use of a lighter weight truck to transport the extra person to or from the work site.  Mr. Jones then assumes—without evidence—that he must have been the one tasked with driving the extra person (or himself) in the lighter vehicle, rather than packing, loading, and driving the box truck.  These arguments are entirely speculative and cannot defeat summary judgment.  The documentary evidence shows that in 99% of the moves in which Mr. Jones participated, a box truck was used, and he packed, loaded, and drove it.

Even if the Court were to assume that Mr. Jones drove a lighter weight vehicle on several occasions, there is no evidence that he did this on any interstate jobs.  He does not dispute that he made at least seventeen interstate trips in a truck that weighed over 10,001 pounds.  The Eighth Circuit has held that "[t]he Motor Carrier Act exemption applies even where interstate transportation makes up a small percentage of an employee's duties." *Alexander*, 834 F.3d at 871. This is because one who drives in interstate commerce "affect[s] the safety of motor vehicle operations."  *Id.* at 872.  Therefore, evidence of "multiple

interstate trips" driven in a vehicle weighing at least 10,001 pounds will trigger the motor-carrier exemption.  *Id.*  There is clear evidence of such trips in the case at bar, and the number of such trips is not *de minimis*.  Accordingly, the motor-carrier exemption to the FLSA bars Mr. Jones's claim for overtime compensation.

## B.  Retaliation Claim

Mr. Jones next contends that Mr. Baldwin fired him in retaliation for Mr. Jones asserting his FLSA rights.  In support of this claim, Mr. Jones asserts that on one occasion in 2018, he had a conversation with Mr. Baldwin about a prior lawsuit involving employees of Two Men and a Truck who demanded overtime compensation.  During that same conversation, Mr. Jones informed Mr. Baldwin of his obligation to pay him overtime compensation, which allegedly made Mr. Baldwin angry.  Still, Mr. Jones was not fired from Two Men and a Truck for another three months.  In the interim, he did not file or threaten to file an FLSA complaint.

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). Claims of retaliation under the FLSA are subject to the *McDonnell Douglas* burden-shifting framework. *See Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must first establish a *prima facie* case of retaliation by "showing that he participated in a statutorily protected activity, that [the defendant] took an adverse employment action against him, and that there was a causal connection between them." *Grey*, 396 F.3d at 1034–35. If the plaintiff can establish a *prima facie* case, the defendant

must "articulate[] legitimate, non-retaliatory reasons for [the plaintiff's] discharge." *Id.* at 1035. Then, the plaintiff has the burden to show that "the legitimate, non-retaliatory reasons articulated by appellees were not the true reasons for discharge, but merely a pretext for retaliation." *Id.*; *see generally McDonnell Douglas*, 411 U.S. at 802–04. "In the summary judgment context, the issue [is] whether the evidence [is] sufficient to create a genuine issue of material fact on the question whether [the defendant] discharged [the plaintiff] in retaliation" for actions protected by the FLSA. *Grey*, 396 F.3d at 1035.

Even assuming, *arguendo*, that Mr. Jones's conversation about overtime with Mr. Baldwin in March of 2018 was statutorily protected, there are no facts to suggest that it was causally related to his termination three months later.  During that three-month period, it is undisputed that Mr. Jones suffered no adverse employment action, and, in fact, Mr. Baldwin assigned him to drive at least ten more interstate moves, as well as several local moves.  Accordingly, the Court believes that Mr. Jones has failed to establish a *prima facie* case for retaliation.  But even if he had met his *prima facie* burden, it is clear that there were legitimate, non-retaliatory reasons to fire Mr. Jones.  Mr. Baldwin submitted vehicle activity reports (Doc. 34-7) and driver logs (Doc. 34-8) that tend to show that Mr. Jones violated federal safety regulations and company safety policies.  In response, Mr. Jones has not offered any facts to indicate that the real reason for his termination was FLSA-based retaliation.

Under federal law, a driver may operate a commercial motor vehicle for up to eleven out of fourteen hours *only after* the driver has been off duty for ten consecutive hours.  *See* 49 C.F.R. § 395.3(a)(3).  Mr. Jones does not dispute that the engine of his box truck was turned off for fewer than ten hours, and then was turned back on for more

than eleven hours.  He argues that Mr. Baldwin should have considered some of these hours to be exempt from the federal requirements, but he does not suggest that he was fired for some reason other than the ones given by Mr. Baldwin.  Without a showing of pretext by Mr. Jones, his retaliation claim must be dismissed.

### IV.  CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 34) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.  Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this 23rd day of August, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

10